UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 07-310 (RMC) |
| v. | : | |
| | : | **FILED** |
| JOSEPH MUHIDIN MUSTAFA, | : | APR 15 2008 |
| Defendant. | : | |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF THE OFFENSE

If this case were to go to trial, the government's evidence would establish beyond a reasonable doubt that:

Joseph Muhidin Mustafa was hired as a temporary cable installer by the United States Senate in February 1989. On March 2, 1989, he fell approximately five feet from a ledge and twisted his knee. The fall exacerbated a prior injury to his left knee and resulted in a tear to his left anterior cruciate ligament (ACL). On March 10, 1989, Mustafa underwent surgery to repair his ACL.[1]

On April 20, 1989, Mustafa applied to the Office of Workers' Compensation Programs (OWCP), which is administered by the Department of Labor, for disability compensation based on his torn ACL. OWCP accepted his condition as a "temporary total disability," and began paying him disability compensation. The first several disability payments were lump sums totaling around $14,000. Beginning in September 1990, Mustafa was placed on OWCP's periodic rolls, and was provided a monthly tax-free benefit, based on a percentage of his former monthly salary. Mustafa continued to receive benefits from OWCP until February 8, 2006; in total, he received $220, 608.

---

[1] Mustafa had previously undergone a medical meniscectomy to his left knee in 1987.

At the time of his enrollment, OWCP advised Mustafa of requirements of the program, which include the responsibility to seek suitable work as soon as he was medically able; the responsibility to report immediately to OWCP any information about any employment, including the rate of pay and any "wages in kind;" and the responsibility to report any other income or benefits received.

Once Mustafa was placed onto OWCP's periodic rolls, the agency required him to complete several forms on an annual basis to certify that he continued to be eligible to receive disability payments. In particular, he was required to complete a "Claim for Continuing Compensation on Account of Disability" (Form 1032), which required him to report any income earned or benefits received by him for the previous fifteen month period.

During the approximately seventeen years that Mustafa received disability compensation benefits, he underwent five surgeries to his left knee: March 10, 1989; January 10, 1991; August 28, 1992; March 21, 1995; and May 2, 1996. OWCP continued to classify Mustafa as "temporarily totally disabled" until June 23, 2003, when he was cleared for light duty work by a physician.

Although he was cleared to return to "light duty" work, Mustafa did not provide any documentation to OWCP indicating that he either sought or obtained any sort of employment. Nor did he report to OWCP any earnings or benefits he received at any point during the period in which he received disability benefits. In particular, on January 8, 2005, Mustafa submitted a Form 1032 in which he certified that he had not earned any income or received any benefits during the fifteen preceding months (in other words, from October 8, 2003, until January 8, 2005). The January 8, 2005, Form 1032 was the last annual form he submitted to OWCP,

2

although he was required to submit another Form 1032 in January 2006, and continued to receive workers' compensation benefits up until February, 2006.

In June 2005, Mustafa called the United States Senate and spoke to an employee in their personnel office concerning his disability compensation benefits. In the course of this conversation, Mustafa stated that he could not drive a vehicle due to the pain caused by his knee injury and the side effects of pain medications. He also complained the he was not receiving enough money from OWCP. The employee became suspicious and "googled" Mustafa's name. The employee discovered that Mustafa competed in several street racing competitions at local racetracks, and referred this case for investigation to the Department of Labor Office of Inspector General.

Documentary evidence uncovered during the investigation revealed that Mustafa actively raced and won prize money at racetracks in the mid-Atlantic area beginning in May 1998 through November 2006. When interviewed by law enforcement on August 22, 2006, Mustafa admitted to racing cars since 1995. None of these earnings were reported to OWCP.

Beginning in, or, or about January 2004, Mustafa was employed as a security guard by Code 3 Security, a company that provides security services to companies in and around Bowie, Maryland. Mustafa received his first check from Code 3 Security on January 23, 2004, in the amount of $993. Thereafter he received regular payments from Code 3 Security, either by check or in cash. In total, Code 3 Security paid Mustafa $27,691 in 2004. Mustafa did not report these earnings to OWCP. Mustafa continued to work for Code 3 Security until he was terminated in June 2005. During the six month period between January 2005 and June 2005, Code 3 Security paid Joseph Mustafa $13,061. Mustafa did not report any of these earnings to OWCP.

Beginning in June 2005, Mustafa, together with two other individuals, created a company called, "APS Security." This company provided passive security services to businesses in the area surrounding Annapolis, Maryland. It was licensed by the State of Maryland in August 2005. Mustafa's title was Director of Operations at APS Security. Records reveal APS Security paid Mustafa $29,087.39 in 2005, and $85,573 in 2006. Mustafa did not report any of these earnings to OWCP.

On August 22, 2006, agents from the Federal Bureau of Investigation and the Department of Labor's Office of the Inspector General conducted a search of the Mustafa's home pursuant to a federal search warrant. That search uncovered a number of racing trophies and documentary evidence supporting the charges in this case, including information relating to APS Security. Mustafa was present during a portion of the search warrant, and was interviewed by law enforcement. Mustafa admitted to beginning his racing career in 1995 to supplement his OWCP benefits, and stated that he had signed the Form 1032s requesting continued workers' compensation benefits that he submitted to OWCP.

That same day, on August 22, 2006, just hours after the search of his home, Mustafa approached the general manager of Walker Pontiac of Bowie, Maryland. Mustafa had worked security for Walker Pontiac during both his employment with Code 3 Security and APS Security. At that time, Mustafa asked the general manager not to say anything about Code 3 Security, or its owner, if anyone came to him and asked him questions.

In May 2007, members of the United States Attorney's Office met with Mustafa and his attorney, Roland Walker. After that meeting, on May 30, 2007, Mustafa had his attorney fax to the United States Attorney's Office seven letters that he alleged that he sent to OWCP. The first

three letters (August 11, 2003, November 10, 2003, and March 25, 2003) communicated his purported desire to return to light duty work. The last four letters (December 20, 2004, February 3, 2005, June 5, 2005, and June 5, 2006) allegedly sought the suspension of Mustafa's disability compensation payments. These seven letters, despite being properly addressed, were never received by OWCP.

Based upon the money that the government now knows Mustafa earned, it has calculated that from January 2, 2004, through January 22, 2005, OWCP paid Mustafa $15,482, which he should not have received. It has further calculated that from January 2, 2004, through February 18, 2006 (the last day on which he received OWCP benefits), Mustafa was paid $32,311, which he should not have received.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government or the defendant, but is instead a statement of facts intended to provide the necessary factual predicate for the guilty plea in this case. In addition, this proffer contains facts that are relevant to the application of the United States Sentencing Guidelines at sentencing.

Respectfully submitted,

JEFFREY A. TAYLOR, Bar No. 498610
United States Attorney

JOCELYN S. BALLANTINE, CA Bar Num. 208267
DIANE G. LUCAS, DC Bar Num. 443610
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W., Room 4237
Washington, DC 20530
(202) 514-7533
Email: Jocelyn.Ballantine2@usdoj.gov

**DEFENDANT'S ACCEPTANCE**

I have read the Proffer of Evidence setting forth the facts as to violation of 18 U.S.C. § 1920 (Federal Employee Compensation Benefit Fraud).  I have discussed this proffer fully with my attorney, Roland Walker, Esquire.  I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation.  I do this voluntarily and of my own free will.  No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 4/15/68

JOSEPH MUHIDIN MUSTAFA
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read each of the pages constituting the government's proffer of evidence.  I have reviewed the entire proffer with my client, Joseph Muhidin Mustafa, and have discussed it with him fully.

Date: 4/15/65

Roland Walker, Esq.
Counsel for Defendant

7