UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 07-310 (RMC) |
| v. : | |
| : | |
| JOSEPH MUHIDIN MUSTAFA, : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.   BACKGROUND**

Joseph Muhidin Mustafa comes before the court to be sentenced pursuant to his plea of guilty to violating Title 18, United States Code, Section 1920 (Federal Employee Compensation Benefit Fraud). The facts underlying this offense are set forth at length in the factual proffer agreed to by the defendant at the time of his guilty plea. For the purposes of this pleading, a brief recitation of the facts is set forth as follows:

Mustafa was hired as a temporary cable installer by the United States Senate in February 1989. On March 2, 1989, he fell approximately five feet from a ledge and injured his knee. On April 20, 1989, Mustafa applied to the Office of Workers' Compensation Programs (OWCP), which is administered by the Department of Labor, for disability compensation based on his injury. OWCP accepted his condition as a "temporary total disability," and began paying him disability compensation. Mustafa continued to receive benefits from OWCP until February 8, 2006; in total, he received $220, 608.

Beginning in, or, or about January 2004, Mustafa was employed as a security guard by Code 3 Security, a company that provides security services to companies in and around Bowie, Maryland. Mustafa received his first check from Code 3 Security on January 23, 2004, in the amount of $993. Thereafter he received regular payments from Code 3 Security, either by check or in cash. In total, Code 3 Security paid Mustafa $27,691 in 2004. Mustafa did not report these earnings to OWCP. Mustafa continued to work for Code 3 Security until he was terminated in June 2005. During the six month period between January 2005 and June 2005, Code 3 Security paid Joseph Mustafa $13,061. Mustafa did not report any of these earnings to OWCP.

Beginning in June 2005, Mustafa, together with two other individuals, created a company called, "APS Security." This company provided passive security services to businesses in the area surrounding Annapolis, Maryland. It was licensed by the State of Maryland in August 2005. Mustafa's title was Director of Operations at APS Security. Records reveal APS Security paid Mustafa $29,087.39 in 2005, and $85,573 in 2006. Mustafa did not report any of these earnings to OWCP.

From January 2, 2004, through January 22, 2005, OWCP paid Mustafa $15,482, which he should not have received. From January 2, 2004, through February 18, 2006 (the last day on which he received OWCP benefits), Mustafa was paid $32,311, which he should not have received.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximums

A violation of Title 18, United States Code, Section 1920 carries a maximum sentence of five years of incarceration, a fine of $250,000, and a term of supervised release of no more than three years. See 18 U.S.C. §§ 1920, 3571(b)(3), 3583(b)(2).

### B.    Sentencing Guidelines Calculation

The Guideline calculation in the Presentence Report places the defendant's total offense level at 12. See Presentence Report (PSR) ¶ 33. This calculation contemplates a two level enhancement obstruction of justice and a two level reduction for acceptance of responsibility. See PSR ¶¶ 29, 32. As discussed further below, the government does not at this point agree that the defendant should receive the two level reduction for acceptance of responsibility. The PSR calculates the defendant's criminal history criminal history category as I. See PSR ¶ 39. According to the Presentence Report, the Guideline range for the defendant is therefore calculated at 10 to 16 months of imprisonment; because this range falls within Zone C, the guidelines recommend that at least one-half of the minimum term by satisfied by imprisonment. See PSR ¶ 78. However, the government asserts that the defendant should not receive a two level reduction for acceptance of responsibility that that the appropriate guideline range for the defendant is therefore 15 to 21 months of straight incarceration.

## III.    GOVERNMENT'S RECOMMENDATIONS

For the reasons set forth below, the government respectfully recommends that the Court sentence the defendant to a period of incarceration within the 15 to 21 month Guideline Range that would apply to the defendant absent the two level reduction for acceptance of responsibility.

For the reasons set forth below, this sentence satisfies the requirements set forth in Title 18, United States Code, Section 3553(a).

    A.    <u>Application of the Federal Guidelines post-*Booker*</u>

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756.

Nonetheless, and as the Supreme Court stated as recently this Monday, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. <u>See</u> <u>United States v. Gall</u>, 128 S.Ct. 586 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The district court should then consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a). <u>See</u> <u>id.</u> These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456 (2007). The Guidelines represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). And the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be based

on the offender's actual conduct and history, and that sentenced be uniform across the country, to the extent possible.  See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.")

The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.  See Gall, at * 7.  It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the district court.  In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing.  Therefore, the government respectfully recommends that the Court sentence the defendant within the applicable Guidelines range to 151 months of imprisonment, which will effectuate the requirements set forth in Section 3553(a).

  B. Basis for Government's Sentencing Recommendation

The government asks the Court to sentence the defendant to a period of incarceration within the 15 to 21 month Guideline Range that would apply to the defendant absent the two

level reduction for acceptance of responsibility. Such a sentence is more than supported by the facts surrounding defendant's offense, his attempts to thwart the Government's investigation, and his inability to accept responsibility for his actions.

### 1. Obstruction of Justice

The Court should impose the two-level enhancement for obstruction of justice pursuant to U.S.S.G. Section 3C1.1. Upon learning that he was being investigated for engaging in benefits fraud, Mustafa took affirmative steps to thwart the Government's investigation. Within hours of the August 22, 2006, search of his home, Mustafa approached the general manager of Walker Pontiac of Bowie, Maryland and instructed him not to tell investigators about Mustafa's employment with Code 3 Security. Mustafa further instructed this witness that he could tell the investigators about Mustafa's involvement APS Security because everything there was legit. After Mustafa left, the witness drafted a detailed handwritten description of the conversation. The witness later reported both the conversation and the fact that Mustafa had worked for Code 3 Security to an investigator from the Department of Labor.

In May 2007, AUSA Perham Gorji conducted a Mae West meeting with Mustafa and his attorney, Roland Walker. Special Agent Tyre Lewis was present at that meeting. After that meeting, on May 30, 2007, Mustafa submitted (through his counsel) a series of seven letters purportedly sent to the Department of Labor. The first three letters (August 11, 2003, November 10, 2003, and March 25, 2003) communicated his purported desire to return to light duty work. The last four letters (December 20, 2004, February 3, 2005, June 5, 2005, and June 5, 2006) allegedly sought the suspension of Mustafa's disability compensation payments.

These letters are attempts to mislead and obstruct the government's investigation of this case. The Department of Labor runs a sophisticated document intake center in London, Kentucky, that scans each document received and forwards it electronically to a claimant's caseworker for review. None of these documents were ever received by the Department of Labor. Moreover, during the entire time frame encompassed by these letters, Mustafa was successfully communicating with OWCP. On December 6, 2004, Mustafa successfully signed up for direct deposit; on January 7, 2005, Mustafa sent a change of address form; and on January 10, 2005, Mustafa called to state that the change of address had successfully rerouted a check to him. (His direct deposit did not take effect until January 22, 2005). Finally, an analysis of Mustafa's hard drive (which was seized during a search on August 22, 2006, after each of these letters was purportedly sent), revealed no evidence of these documents.

2.  Acceptance of Responsibility

Although the defendant has entered a plea of guilty in this case, at this juncture he has not accepted responsibility for his conduct. The government does not, therefore, believe that the defendant should receive a two level reduction for his acceptance of responsibility pursuant to U.S.S.G § 3E1.1(a).

As the application notes to Section 3E1.1 state, "[c]onduct resulting in an enhancement under [this section] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." At the time of the defendant's plea in this case, the government contemplated the possibility that the defendant might nonetheless be one of those extraordinary cases in which

both the 2-level obstruction enhancement and the 2-level acceptance reduction might apply.[1]

Accordingly, the plea agreement stated that if the defendant "clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through [his] allocution and subsequent conduct prior to the imposition of sentence, the Government agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G § 3E1.1(a)."

Both the defendant's statements to the Presentence Report writer and his June 26, 2008, objections to the report indicate to the government that he does not accept responsibility for his actions in this case. In his June 26, 2008, letter, the defendant takes issue with some of the statements in the factual proffer – including the substance of his conversation with an employee at the United States Senate and the substance of his August 22, 2006, conversation with the witness from Walker Pontiac. These factual allegations are ones that the defendant acknowledged and agreed to when he signed the factual proffer in this case at the time of his plea. See Factual Proffer at p. 7 ("I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation").

Additionally, the defendant now states – for the first time – that the money he received on a monthly basis from Code 3 Security was a loan. See PSR ¶ 65, June 26, 2008 letter ¶ 12.

---

[1] In United States v. Hopper, 27 F.3d 378, 381-382 (9th Cir. 1994), the Ninth Circuit held that the relevant inquiry for determining if a case is "extraordinary" is "whether the defendant's obstructive conduct is not inconsistent with the defendant's acceptance of responsibility." The court further observed: "Cases in which obstruction is not inconsistent with an acceptance of responsibility arise when the defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice. In other words, as long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary case within the meaning of Application Note 4 and simultaneous adjustments under §§ 3C1.1 and 3E1 are permissible." Id. (citations omitted).

Again, the allegation that Mustafa was employed by Code 3 Security beginning in January 2004, and the assertion that he earch in excess of $40,ooo from that company, are ones that Mustafa acknowledged and agreed to when he signed the factual proffer in this case at the time of his plea. See Factual Proffer at p. 3, 7.

Based on Mustafa's continued attempts to minimize his criminal conduct, the government does not believe – in light of his prior attempts to obstruct justice – that the defendant should be afforded the benefit of a two-point reduction in his guidelines calculation.

### 3. Loss Calculations

The defendant was enrolled in the OWCP program for just shy of seventeen years. During that period, he received a total of $220,608 in benefits. At the time of his guilty plea, the government agreed to limit the loss calculation in this case to the period beginning on January 2, 2004. In the government's view, this date is appropriate because it is the approximate date on which Mustafa began working for Code 3 Security (although some documents in possession of the government indicate that his employment actually began in December 2003). As part of the terms of the program, the defendant had an affirmative responsibility to report immediately to OWCP any information about any employment, including the rate of pay and any "wages in kind;" and the responsibility to report any other income or benefits received. Despite the fact that he was actively earning money from January 2, 2004 until he was suspended from the program on February 18, 2006, Mustafa failed to report any of these earnings to OWCP. During that approximately 25-month period, Mustafa was paid $32,311, which he should not have received. The government therefore recommends that the Court use this figure as the loss calculation for the purposes of sentencing.

4.   Sentencing Recommendation

Joseph Mustafa engaged in a pattern of lying to the government about his eligibility for benefits over a period of at least two full years.[2] When he learned that he was being investigated for his illegal activities, he attempted to thwart the efforts of the Department of Labor investigators and of the United States Attorney's Office to determine the full extent of his conduct. And, after admitting to the truthfulness of the factual proffer in this case before this Court, the defendant has turned around and asserted that this factual proffer misrepresented the nature and substance of various conversations he had, the nature of his relationship with Code 3 Security, and whether he earned money (and how much money) as a result of that arrangement.

Government benefits such as the disability program administered by OWCP are funded by taxpayers who rightfully demand accountability and honesty on the part of the programs' participants. This is a concept that – time and time again – the defendant has failed to appreciate.

---

[2]   During the course of its investigation, the Government learned that the defendant failed to report his income from racing to OWCP beginning as early as 1995. Moreover, the Government also received credible information that, beginning in 2000, Mustafa was employed as a bouncer at O'Brien's Oyster Bar and Restaurant in Annapolis, Maryland. His employment was abruptly terminated when he was arrested in June 2001 for assaulting a patron of the restaurant. During the time he worked there, he earned between $9 and $11 per hour. Although other workers were paid by check, Mustafa was paid in cash. He told at least one person that he needed to be paid in cash because he was receiving disability payments. This income was not reported to OWCP.

## IV. CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to a period of incarceration within the 15 to 21 month Guideline Range.

Respectfully submitted,

JEFFREY A . TAYLOR
United States Attorney
Bar No. 498610

/s/
_____
JOCELYN S. BALLANTINE
Assistant United States Attorney
California Bar No. 208-267
555 4th Street, N.W.
Washington, DC 20001
Phone: 514-7513
Fax: 305-1577